Isaac J. CORNELIUS and Cornelius
Contractors Corp., Plaintiffs,

v.

David B. LA CROIX, James F. Estes, Milwaukee Metropolitan Sewerage District, Letha F. Harmon, E. Marty Payne, David Manning, and William P. Beckett, Defendants.

No. 83–C–470.

United States District Court,
E.D. Wisconsin.

April 3, 1986.

See also 575 F.Supp. 1392.

Frank A. Putz, Asst. Corp. Counsel, Milwaukee, Wis., for defendant Letha F. Harmon.

Mark M. Camp, Pfannerstill & Camp, Milwaukee, Wis., for plaintiffs.

James H. Peterson, Milwaukee, Wis., for defendants La Croix and Sewerage Dist.

Daniel S. Farwell, Asst. Atty. Gen., Madison, Wis., for defendants Payne, Manning & Beckett.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiffs, Isaac J. Cornelius, a full-blooded American Indian, and Cornelius Contractors Corporation (Cornelius), filed this action pursuant to 42 U.S.C. § 1983 and sixteen other federal statutory and constitutional provisions. They alleged that the defendants conspired to deprive the corporate plaintiff, Cornelius, of its certification as a minority business enterprise (MBE) eligible for preference in the awarding of federally funded construction contracts. The plaintiffs charged that the defendants' actions constituted unlawful discrimination and deprived them of their property without due process of law.

The liability and damage issues were tried to a jury; the question of equitable relief was reserved for the court. At the close of the plaintiffs' case, the court granted the defendants' motion for a directed verdict as to the conspiracy and discrimination claims. At the same time, the court dismissed with prejudice the plaintiffs' action against three defendants: the County of Milwaukee, the Wisconsin Department of Natural Resources (DNR), and the Wisconsin Department of Development (DOD).

The jury returned a special verdict finding that each of the remaining defendants had deprived Cornelius of its status as a certified MBE without due process of law. The jury awarded Cornelius damages for lost profits of $20,000 each against defendants David La Croix, James F. Estes, and the Milwaukee Metropolitan Sewerage District (District). In addition, the jury assessed punitive damages of $50,000 against Letha Harmon, $45,000 against Mr. Estes, and $5,000 against Mr. La Croix. Currently pending are several post-trial motions as well as the plaintiffs' claim for equitable relief.

## I. POST–TRIAL MOTIONS OF THE DISTRICT AND DAVID LA CROIX

Defendants David La Croix and the District (collectively referred to as "the District defendants") have filed a motion for judgment notwithstanding the verdict (J.N. O.V.) or, alternatively, a new trial contending that (1) neither they nor defendant James Estes deprived Cornelius of its MBE certification without due process of law; (2) Mr. La Croix is entitled to qualified immunity from damages; and (3) challenging the jury award of both compensatory damages against Mr. La Croix, Mr. Estes and the District, and the punitive damage award against Mr. La Croix. As a prerequisite to their claim that Mr. La Croix is entitled to qualified immunity in this case, the District defendants have moved to amend their complaint to assert the affirmative defense of qualified immunity on behalf of Mr. La Croix. Finally, the District has moved for an enlargement of time to answer Mr. Estes' cross-claim against the District for indemnification.

Before addressing the merits of these motions, the court notes that counsel for Mr. La Croix and the District, James H. Petersen, challenges not only the verdict against his own clients but also contests the verdict against Mr. Estes. Mr. Petersen never has purported to appear on behalf of Mr. Estes in this action, nor has he filed a notice of appearance on behalf of Mr. Estes. Neither has Mr. Estes, appearing pro se in this action, indicated to the court that he joins in the District defendants' post-trial motions. The court simply will not allow counsel to speak on behalf of a party to this lawsuit that he does not represent and who has not joined in the pending motions. Accordingly, the court will not entertain the District defendants' challenge to the verdict against Mr. Estes.

### A. Due Process Violation

The District defendants, Mr. La Croix and the District itself, move for J.N.O.V. or a new trial as to the jury's finding that they deprived Cornelius of its MBE certification without due process of law. In deciding a (J.N.O.V.) motion, the court must consider whether the evidence presented, combined with all reasonable inferences

that can be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the prevailing party. *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149, 153 (7th Cir.1981). A court may not judge the credibility of the witnesses or reweigh the evidence to find a preponderance on one side or the other. *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1410 (7th Cir.1984). The court, however, will consider whether the evidence to support the verdict is substantial; "a mere scintilla of evidence will not suffice." *Id.*

■ The authority to grant a new trial, unlike J.N.O.V., rests almost completely within the trial court's discretion. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). A new trial is warranted to prevent a miscarriage of justice if the district court determines that the jury verdict is contrary to the clear weight of the evidence, the damages are excessive, or, for any other reason, the trial was not fair to the moving party. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940); *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.,* 695 F.2d 281, 288 (7th Cir.1982). A new trial is not justified merely because the jury could have reached a different result. *Continental Air Lines, Inc. v. Wagner-Morehouse, Inc.,* 401 F.2d 23, 30 (7th Cir.1968).

The District defendants, in their post-trial motion, do not challenge the court's earlier finding that MBE status is a constitutionally protected property interest. Rather, they contend that Cornelius was not recognized by the District as having MBE status at the time the firm was denied MBE certification. The evidence proves otherwise.

In early 1981, Cornelius submitted a registration form to the District identifying itself as an MBE. Firms submitting such registration forms were accepted by the District as MBEs if no questions arose from an examination of the forms themselves. Pursuant to this "self-certification," Cornelius was treated by the District as having MBE status and was placed on a list of firm names supplied to potential prime contractors seeking MBE subcontractors to meet the participation goals for District work funded in whole or in part by federal or state grants. During the time Cornelius was recognized by the District as a certified MBE, the company bid on and received subcontract work as an MBE on District contracts.

There is no evidence to suggest that under the District's program MBE certification was effective for only a limited period of time or lapsed automatically at the end of one year. It was Mr. Cornelius' reasonable understanding that his firm's MBE certification did not automatically lapse but could be revoked only for good cause. It can be inferred that this was also the District's understanding based on the fact that the District felt it necessary in July 1982 to change the procedural rules governing its MBE program.

■ In July 1982, the District altered its rules to require that each firm seeking MBE status file a certified affidavit after October 15, 1982, to be effective for one year only. The notice requiring submission of the certified affidavit also purported to withdraw all prior MBE certification. It is true that a public entity may redefine property interests without causing a deprivation of due process. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) ("[A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels."). That, however, is not the case here. The District changed only the procedure governing MBE certification and not the substantive standard for certification.

Pursuant to the District's new rules, Cornelius submitted its affidavit in November 1982. On March 17, 1983, with no prior notice or opportunity to be heard, Cornelius was informed that it would not be certified by the District as an MBE. The reasons for the deprivation of certification are not relevant to the plaintiffs' procedural due

process claim and need not be addressed by the court.

The key issue, as the District itself asserts, is whether Cornelius had attained MBE status with the District prior to March 1983. The District contends that because of its 1982 rule change, Cornelius as well as all other previously certified MBEs automatically lost their certification as of October 15, 1982, pending the submission of new affidavits subject to District approval and only effective for a one-year period. Therefore, according to the District, Cornelius did not lose anything in March 1983 when it was denied MBE certification because it had already lost its certification in October 1982.

 Cornelius, however, had been treated as an MBE by the District prior to the time it was denied certification in March 1983. Mr. La Croix testified that even after the District changed its procedures for MBE certification in 1982, he continued to recognize Cornelius as an MBE. The District, of course, was entitled to change its procedure for MBE certification. It was not permissible to revoke such certification, however, without due process of law, whether that revocation occurred on October 15, 1982, on March 17, 1983, or at some point between these dates. "'While the Legislature may elect not to confer a property interest ..., it may not constitutionally authorize the deprivation of such an interest once conferred without appropriate procedural safeguards.'" *Cleveland Bd. of Educ. v. Loudermill,* — U.S. ——, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result in part)). Nor may the District circumvent the requirements of due process simply by changing its rules for MBE certification.

 The District asserts that it has sole power to determine whether a firm qualifies as an MBE for purposes of awarding District contracts; that authority is not questioned by the court. The district quite correctly observes that Cornelius' property interest in MBE certification by the District was not created by federal statute, 42 U.S.C. § 6705, or by the policy of the U.S. Environmental Protection Agency defining an MBE. 43 Fed.Reg. 60220, 60221–22 (1978). Instead, the firm's property interest arose because the District recognized and treated Cornelius as an MBE. The District can revoke that status but only if it first gives Cornelius notice and an opportunity to be heard.

 In short, the District cannot create a property interest and then take it away without due process. Once it is determined that a constitutionally protected property interest exists, the process due is a question of federal constitutional law and cannot be circumscribed by state legislation or regulation. *Cleveland Bd. of Educ. v. Loudermill, supra,* 105 S.Ct. at 1493 (expressly rejecting the "bitter with the sweet" approach to due process of the plurality opinion in *Arnett v. Kennedy, supra,* 416 U.S. at 152–54, 94 S.Ct. at 1643–44).

 The present case is analogous to the situation in which an individual receiving governmental benefits, such as welfare or unemployment compensation, or who is licensed by a governmental body is first told that he presumptively no longer qualifies for the license or benefits but must requalify under a new procedure, and subsequently is informed that he does not qualify for the entitlement. In such a case, the individual is entitled to adequate notice and an opportunity to be heard prior to being deprived of his benefits or license. *See, e.g., Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see also Freitag v. Carter,* 489 F.2d 1377, 1382 (7th Cir.1973) ("A governmental licensing body which judges the fitness of an applicant must afford the applicant adequate notice and a hearing.")

Because the evidence supports the jury's verdict that the District and its employee,

Mr. La Croix, deprived Cornelius of its MBE certification without due process of law, the District defendants' motion for J.N.O.V. or, in the alternative, a new trial as to the liability issue will be denied.

■ In the alternative, the District moves for a new trial alleging that it was unduly prejudiced by the erroneous assertions of plaintiffs' counsel on several occasions during the trial that Cornelius' status as an MBE already was established by federal law. Notwithstanding the comments of plaintiffs' counsel, the jury was clearly instructed that they could not find a due process violation unless they first determined that Cornelius "was registered with the respective agencies that employed the individual defendants and was recognized by the defendants as an MBE immediately prior to the time that they denied or cancelled the corporation's status as a Minority Business Enterprise." In view of this instruction, the court concludes that the challenged comments of plaintiffs' counsel do not warrant a new trial.

### B. Qualified Immunity

David La Croix asserts that as a matter of law he is entitled to qualified immunity from the damages awarded against him in this case. Mr. La Croix, however, did not plead the defense of qualified immunity in his answer to the plaintiffs' complaint or at any time prior to the jury verdict in this case. He first moves, therefore, to amend his answer, pursuant to Federal Rule of Civil Procedure 15(b), to state the affirmative defense of qualified immunity.

■ Under Federal Rule of Civil Procedure 8(c), a defendant must plead all of his affirmative defenses in his answer. *See also* Fed.R.Civ.P. 12(b). Any defense not pleaded is waived. *Pinto Trucking Service, Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir.1981). Qualified immunity is an affirmative defense which must be pleaded by the defendant. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

■ Mr. La Croix seeks to overcome his waiver of the qualified immunity defense by a Rule 15(b) motion to amend. Under Rule 15(b), issues not raised by the pleadings but tried with "the express or implied consent of the parties" are treated as if raised in the pleadings. A party may move to amend the pleadings to raise such issues at any time, even after judgment.

■ Mr. La Croix's reliance on Rule 15(b) is misplaced here. The question of qualified immunity was not tried with the plaintiffs' "express or implied consent." The issue, in fact, was not tried at all. Mr. La Croix himself acknowledges that the defense of qualified immunity in this case presents a question of law for the court and not one of fact for the jury. *See Bates v. Jean*, 745 F.2d 1146, 1151 (7th Cir.1984). Qualified immunity is an issue, therefore, which by its very nature is not resolved by the presentation of evidence at trial.

The cases relied on by Mr. La Croix in support of his motion for a Rule 15(b) amendment are inapposite. In both of the cases that he cites, the immunity issue was one of fact on which evidence was introduced at trial. *Trapnell v. Riggsby*, 622 F.2d 290, 294 (7th Cir.1980); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 73–74 (2d Cir.1968). Although the defendants in *Trapnell* and *Pious* were permitted pursuant to Rule 15(b) to assert an immunity defense after having failed to plead the defense, the cases were decided prior to the Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

*Harlow* redefined the qualified immunity defense by rejecting any inquiry into a defendant's state of mind in favor of a completely objective standard. Under the doctrine of qualified immunity as it now stands, the issue is whether the challenged conduct violated clearly established constitutional or statutory rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738.

■ The plaintiffs, moreover, would be prejudiced if Mr. La Croix is permitted

at this late date to raise the defense of qualified immunity. The complaint in this case was filed well over two years prior to trial. Only after the jury returned a verdict for both compensatory and punitive damages against Mr. La Croix did he move to amend his answer to assert the affirmative defense of qualified immunity. The court will not countenance a defendant's waiting to see whether the trial will result in a verdict unfavorable to him before raising for the first time a defense to that verdict. Resort to Rule 15(b) does not guarantee that the express affirmative pleading requirement of Rule 8(c) will not be enforced. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1492 (1971).

■ Finally, the court's earlier ruling that the individual state defendants were entitled to qualified immunity from damages has no bearing on Mr. La Croix's motion to amend. The state defendants, unlike Mr. La Croix, raised the affirmative defense of qualified immunity in their answer. Accordingly, Mr. La Croix's motion to amend his answer to state the affirmative defense of qualified immunity will be denied. It follows, therefore, that his motion for J.N.O.V. or, alternatively, a new trial based on the defense of qualified immunity from damages will be denied.

C. Compensatory Damages

■ The District defendants move for a remittitur of the compensatory damage awards of $20,000 each against the District, Mr. La Croix,. and Mr. Estes to a single award of $9,300 for which these three defendants would be held jointly and severally liable. The court, as previously explained, will not consider the District defendants' challenge to the verdict against Mr. Estes. If the district court determines that a jury verdict is excessive, it may either grant the new trial motion or deny the motion conditioned upon the prevailing party's acceptance of a remittitur of the damage award. *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1392 (7th Cir.1984).

In the present case, the plaintiffs sought compensatory damages for lost profits resulting from the decertification of Cornelius as an MBE. The plaintiffs did not seek damages for mental or emotional distress or for loss of business reputation. The court, accordingly, instructed the jury:

"The plaintiff has the burden of establishing by a preponderance of the evidence that the plaintiff corporation would have been successful in being selected as a subcontractor on any particular project but for its ineligibility to be considered as an MBE participant in fulfilling governmentally mandated MBE goals.

"In deliberating on this question, you may only consider what amount of money, if any, would reasonably have been expected to have been accounted for as profit from any subcontract work.

"Once again, it's the plaintiff's burden to prove, by a preponderance of the evidence, that the corporation not only lost business opportunities, but also the amount of lost profit resulting from such decertification without due process of law."

The jury also was cautioned that they could not presume damages or award speculative damages, that is, damages which although possible are not reasonably certain to occur. *See* 3 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 85.08 (1977).

■ The only evidence to support an award of compensatory damages against the District defendants came from Mr. Cornelius. He testified that his firm submitted subcontract bids on two District projects, the Oak Creek North Interceptor project and the Franklin Northeast Interceptor project, of $130,000 and $56,000 respectively, a cumulative total of $186,000. The District does not argue that Cornelius did not lose the subcontract work on these two projects as a proximate result of being denied MBE certification by the District.

Cornelius, however, is not entitled to recover the gross sum of these bids but only the profit he reasonably could have expect-

ed to make on the subcontract work for the two projects. Mr. Cornelius testified that he generally tried to calculate a 10% to 15% profit margin on his subcontract bids, although he indicated that as a general rule he realized an actual profit of only about 5%. Later in his testimony, however, in discussing his subcontract bid on the Wisconsin DNR's Brookfield Wastewater Treatment Plan project, Mr. Cornelius testified that he expected a profit of approximately 10%.

■ Based on Mr. Cornelius' testimony, the jury could have reasonably awarded the plaintiffs $18,600 in compensatory damages against the District defendants, representing 10% of the firm's bids on the Oak Creek and Franklin projects. Any amount beyond the profit Cornelius reasonably could have expected for work on these two projects would be purely speculative and cannot support a compensatory damage award. Thus, while the plaintiffs might have offered evidence of other business opportunities lost as a result of the District's decertification of Cornelius as an MBE, they failed to do so. The plaintiffs suggest that they could have proved substantially greater actual damages had their economic expert been permitted to testify. His testimony, however, was not allowed; the plaintiffs do not now challenge the court's ruling in this regard. The court, therefore, will set aside the compensatory damage awards against Mr. La Croix and the District and will order a new trial limited solely to the determination of compensatory damages against these defendants unless the plaintiffs accept a remittitur of the compensatory damages against such defendants to a total of $18,600.

The District defendants also assert that the compensatory damages awarded individually against the District, Mr. La Croix and Mr. Estes should be a single award for which these three defendants are held jointly and severally liable. Again, the court will not consider the District defendants' claim as to the compensatory damage award against Mr. Estes.

■ "[T]he obligation to pay compensatory damages to rectify an inseparable injury for which several defendants are liable is joint and several." *McKinnon, supra,* 750 F.2d at 1387. In the matter at bar, the jury found that the District and Mr. La Croix, as a District employee, deprived Cornelius of its status as a certified MBE without due process of law. As a result, Cornelius lost its MBE status with the District and, consequently, suffered lost business profits. It is not possible to determine which portion of the plaintiffs' injury would have been avoided if one of the two District defendants had not participated in the wrongful conduct. *See id.* The injury caused by these defendants, therefore, is indivisible. Accordingly, the court will order the District and Mr. La Croix jointly and severally liable for compensatory damages of $18,600, if the plaintiffs accept the remittitur, or as determined in a partial new trial, if the plaintiffs reject the remittitur.

■ Although it is appropriate for the court to order the District defendants jointly and severally liable for compensatory damages, the issue is academic in this case. The Wisconsin indemnity statute, Wis.Stat. § 895.46, provides that a defendant public employee against whom a judgment for damages is entered for acts within the scope of employment shall be indemnified by the political subdivision employing him or her. *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1268 (7th Cir.1984). As a matter of state law, therefore, the District is responsible for any damages awarded against Mr. La Croix who for purposes of this suit was clearly acting within the scope of his employment with the District.

D. Punitive Damages

■ The jury assessed punitive damages of $5,000 against Mr. La Croix. He contends that this award must be overturned because there is no evidence that his conduct toward the plaintiffs was wanton, malicious or oppressive.

Punitive damages may be assessed in a § 1983 action "when the defendant's con-

duct is shown to be motivated by evil force or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). There is absolutely no evidence in the record that Mr. La Croix was motivated by evil force or intent when he recommended that Cornelius not receive MBE certification. Nor is there evidence that he acted with reckless or callous indifference to the plaintiffs' due process rights.

In *Soderbeck v. Burnett County, Wis.,* 752 F.2d 285 (7th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985), the Court of Appeals for the Seventh Circuit considered the showing required to establish "reckless or callous indifference" under the *Smith v. Wade* standard for awarding punitive damages in a § 1983 action. The court in *Soderbeck* held:

> "We may therefore set it down as a condition of awarding punitive damages that the defendant almost certainly knew that what he was doing was wrongful and subject to punishment. Among the types of conduct that fit this description is conduct so contrary to our society's basic ethical principles that it can safely be assumed to have been undertaken with knowledge that it was legally as well as morally wrong, including conduct that has come to be regarded as contrary to the modern civil rights, as well as the older personal liberties, of Americans."

*Id.* at 291. The court reasoned that "[u]nless the defendant knew that the conduct which resulted in the injury to the plaintiff was forbidden, an award of punitive damages will have no deterrent effect." *Id.* at 290.

The deprivation of a company's status as a certified MBE without prior notice and an opportunity to be heard cannot be characterized as an action contrary to "society's basic ethical principles." Nor was Mr. La Croix's challenged conduct widely regarded at the time it occurred as a federal constitutional tort. Further, the plaintiffs presented no evidence to support a finding that Mr. La Croix knew or ought to have known that depriving Cornelius of its MBE certification without prior notice and hearing violated the plaintiffs' constitutional right to due process of law. Accordingly, Mr. La Croix will be granted J.N.O.V. as to the punitive damage award of $5,000 against him.

■ Mr. La Croix, in the alternative, moves for a new trial of the issue of punitive damages. Pursuant to Federal Rule of Civil Procedure 50(c)(1), the court must conditionally rule on this alternative motion. Mr. La Croix asserts that plaintiffs' counsel improperly argued to the jury that it could consider the value of the District's new construction projects in assessing damages and that any punitive damages awarded against Mr. La Croix would be paid by the District.

■ "The misconduct of counsel ... justifies a new trial where that misconduct prejudiced the adverse party." *Wiedemann v. Galiano,* 722 F.2d 335, 337 (7th Cir.1983). The key issue is whether the trial was fair to the moving party. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940).

It was not a misstatement of law for plaintiffs' counsel to point out that any punitive damages assessed against Mr. La Croix would be paid by the District. Such is the case under Wisconsin's indemnification statute. Wis.Stat. § 895.46(1)(a); *see also Bell, supra,* 746 F.2d at 1271.

■ At the same time, the award of punitive damages against an individual public official in a § 1983 action is to be assessed in view of his personal financial resources and not the presumably far more substantial resources of the municipality for which he works. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 269–71, 101 S.Ct. 2748, 2760–62, 69 L.Ed.2d 616 (1981). Thus, the comments of plaintiffs' counsel were improper insofar as they suggested that any award of punitive damages against Mr. La Croix should be based on

the District's, rather than Mr. La Croix's, financial status.

The court cannot conclude, however, that the comments of plaintiffs' counsel deprived Mr. La Croix of a fair trial on the issue of punitive damages. The jury was clearly instructed that if they chose to award punitive damages against an individual defendant, they should consider the personal wealth, or lack of wealth, of that defendant in determining the amount of punitive damages. That the jury did just that in assessing punitive damages against Mr. La Croix is evidenced by the amount of punitive damages, $5,000, awarded against Mr. La Croix. If the jury had been influenced by the wealth of the District in rendering their punitive damage award against Mr. La Croix, one would have expected the award to have been substantially greater than $5,000. Accordingly, Mr. La Croix's alternative motion for a new trial of the punitive damage issue will be conditionally denied.

E. Motion To Enlarge Time To Answer Estes Cross-Claim

In his amended answer to the plaintiffs, filed May 27, 1983, defendant James Estes interposed a cross-claim against the District for payment of any damages awarded against him. The District never answered Mr. Estes' cross-claim. The jury returned a verdict against Mr. Estes for compensatory damages of $20,000 and punitive damages of $50,000. The District now moves for an enlargement of time pursuant to Federal Rule of Civil Procedure 6(b) to answer Mr. Estes' cross-claim. The motion will be denied.

Under Rule 6(b)(2), the court, in its discretion, may order an extension of time after the expiration of a specified time period but only for "cause shown" and if "the failure to act was the result of excusable neglect." This standard requires the party seeking the enlargement to demonstrate good faith and a reasonable basis for noncompliance with the time limit specified in the rules. 4 C. Wright & A. Miller, Federal Practice and Procedure § 1165

(1969) (cases cited therein). Mere inadvertence will not support a finding of excusable neglect. *See Sherrod v. Piedmont Aviation, Inc.,* 516 F.Supp. 39, 41 n. 1 (E.D. Tenn.1978). The court will also consider whether allowing the enlargement of time would prejudice an opposing party. *Coady v. Aguadilla Terminal, Inc.,* 456 F.2d 677, 678 (1st Cir.1972).

Counsel for the District states by way of affidavit that he failed to answer the cross-claim because he simply "missed" the filing of the stipulation allowing Mr. Estes to file his amended answer containing the cross-claim. Counsel for the District himself signed the stipulation. To claim now, well over two years after Mr. Estes filed his cross-claim, that the District's failure to answer was due to excusable neglect strains credulity. The District's failure to answer the cross-claim was the result of inadvertence and not excusable neglect.

The District also asserts that granting the motion for enlargement would not prejudice Mr. Estes. The court finds that just the opposite is suggested in this case. Mr. Estes was unrepresented at trial and only appeared as an adverse witness for the plaintiffs. If he had been put on notice by an answer to his cross-claim that the District opposed his indemnification claim, he may well have chosen to appear at trial, pro se or by counsel, to present his case. Accordingly, the District's motion for an enlargement of time to answer Mr. Estes' cross-claim will be denied.

II. LETHA HARMON'S MOTION TO SET ASIDE PUNITIVE DAMAGE AWARD

Letha Harmon, the MBE coordinator for the County, moves pursuant to Federal Rule of Civil Procedure 59(e) to set aside the jury verdict awarding Cornelius $50,000 in punitive damages against her. In the alternative, she seeks a new trial pursuant to Rule 59(a) of the punitive damage issue. Her motion to set aside the verdict pursuant to Rule 59(e) is properly

characterized as a motion for J.N.O.V. pursuant to Rule 50(b). Thus characterized, the motion will be granted.

■ Ms. Harmon first asserts that Cornelius may not recover punitive damages from her because the jury did not award compensatory damages against her. She also contends that there is no evidence to support the award of punitive damages against her. Because I agree with this latter contention for essentially the same reasons that I overturned the punitive damage award against Mr. La Croix, I need not address Ms. Harmon's initial argument.

There is no evidence in the record that Ms. Harmon's wrongful conduct was motivated by evil force or intent or that it involved reckless or callous indifference to the plaintiffs' due process rights. *Smith v. Wade, supra,* 461 U.S. at 56, 103 S.Ct. at 1640. Ms. Harmon could not have acted with reckless or callous indifference to a right that she could not reasonably have been expected to know that the plaintiffs possessed. *See Soderbeck, supra,* 752 F.2d at 290–91. Accordingly, Ms. Harmon will be granted J.N.O.V. as to the punitive damage award of $50,000 against her.

### III. PLAINTIFFS' POST–TRIAL CLAIMS

The plaintiffs seek equitable relief in this action. They also have moved for a new trial on the question of damages against E. Marty Payne, minority business coordinator for the Wisconsin DNR.

■ As a preliminary matter, the state defendants, Mr. Payne, David Manning and William P. Beckett, have moved to strike the plaintiffs' post-trial brief in support of their claim for equitable relief because it was filed four days late, according to the briefing schedule set by the court at the close of trial. In their post-trial brief, the plaintiffs not only addressed the issue of equitable relief, to which the court's briefing schedule applied, but also responded to the numerous post-trial motions brought by the defendants and pressed their own motion for a partial new trial.

Under Local Rule 6.01 of this district, the court, on a showing of good cause, may extend the time for the filing of a brief. The plaintiffs did not request an extension of time to file their post-trial brief.

The state defendants contend that they were prejudiced by the plaintiffs' late filing because it reduced by several days their time to respond to the plaintiffs' claim for equitable relief. If these defendants were so concerned about their ability to effectively respond to the plaintiffs' post-trial brief within the schedule established by the court, they reasonably could have asked the court for an extension of time to file their brief. They requested no extension.

The plaintiffs certainly should have sought an extension of time from the court to file their post-trial brief in support of their claim for equitable relief. However, in light of the plaintiffs' minimal delay in filing their brief and because I do not believe the state defendants have been prejudiced by the plaintiffs' late filing, I will deny the motion to strike the plaintiffs' post-trial brief. The rigid enforcement of the briefing schedule under these circumstances would disserve the interests of justice.

### A. Damages Against E. Marty Payne

■ The court previously ruled that Mr. Payne was entitled to qualified immunity from damages and, therefore, dismissed the plaintiffs' damage claims against him. The plaintiffs now move for a new trial of the issue of damages against Mr. Payne. The plaintiffs have advanced no authority to contradict the court's ruling that Mr. Payne is entitled to qualified immunity in this case. I will not repeat my rationale for this decision as it is part of the record. I merely point out that the constitutional right to notice and an opportunity to be heard prior to the deprivation of a firm's MBE certification was not clearly established at the time of Mr. Payne's wrongful conduct in this case. *See Harlow supra,* 457 U.S. at 818–19, 102 S.Ct. at 2738. Mr. Payne's right to qualified immunity in no

way affects the availability of equitable relief against him.

 The court also notes that the parties stipulated that this action was brought against the individual defendants, including Mr. Payne, in their individual, or personal, capacities and in their official capacities. A public official may be sued in both capacities. *See Kolar v. County of Sangamon,* 756 F.2d 564, 568–569 (7th Cir. 1985). To the extent Mr. Payne is sued in his official capacity as a state employee, he is not protected by the doctrine of qualified immunity. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Instead, he is entitled to immunity from damages under the eleventh amendment. *Kentucky v. Graham,* — U.S. ——, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Accordingly, the plaintiffs' motion for a new trial of the issue of damages against Mr. Payne will be denied.

## B. Equitable Relief

In their prayer for relief, the plaintiffs seek not only damages but also declaratory and injunctive relief. Once a constitutional violation is established, the court should "tailor 'the scope of the [equitable] remedy' to fit 'the nature and extent of the constitutional violation.'" *Hills v. Gautreaux,* 425 U.S. 284, 293–94, 96 S.Ct. 1538, 1544, 47 L.Ed.2d 792 (1976) (citation omitted).

> "[First,] [t]he remedy must ... be related to 'the *condition* alleged to offend the Constitution....' ... Second, the decree must indeed be *remedial* in nature, that is, it must be designed as nearly as possible 'to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct.' ... Third, the federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution."

*Milliken v. Bradley,* 433 U.S. 267, 280–81, 97 S.Ct. 2749, 2757, 53 L.Ed.2d 745 (1977) (citations omitted) (emphasis in original). Within these parameters, the court should make every effort to achieve the greatest degree of relief possible. *Hills, supra,* 425 U.S. at 297, 96 S.Ct. at 1546.

 First, insofar as the plaintiffs seek declaratory and injunctive relief affirming the qualifications of Cornelius as an MBE, their claim will be denied. The central issue in this case was whether Cornelius was deprived of its status as an MBE without due process of law. The wisdom of the defendants' decisions to deprive the firm of its MBE status was not at issue in this case. The jury was instructed accordingly.

Cornelius has no constitutional right to MBE certification. What it does have is a right to due process before being deprived of that status. An equitable remedy in which the court finds Cornelius to be qualified as an MBE, therefore, is beyond the scope of the constitutional violation established by the plaintiffs in this case.

Similarly, the court will not enjoin the defendants from denying Cornelius MBE certification "unless warranted by a change in circumstances." Apart from being ambiguous, such an order implicitly requires the court to rule that Cornelius meets the requirements for MBE certification. That is a determination to be made by the respective state and local defendants, not by the court. The equitable relief ordered in this case must be geared to restoring the MBE status of Cornelius and assuring that the firm is not deprived of this status without due process of law.

The state defendants, E. Marty Payne or his successor in office at the Wisconsin DNR (*see* Fed.R.Civ.P. 25(d)(1)), and David Manning and William P. Beckett or their successors in office at the Wisconsin DOD will be ordered to reinstate Cornelius to MBE status with the DNR and DOD, respectively. Defendant Letha Harmon or her successor in office with the County of Milwaukee similarly will be ordered to reinstate Cornelius to its MBE status with the County.

 It will not be necessary for the court to order the District, Mr. La Croix, and Mr. Estes to restore Cornelius to its status as an MBE with the District. Ac-

cording to the uncontested affidavit of Matthew E. Gordon, Manager of the District's Small, Minority, and Women's Business Affairs Department, Cornelius was accepted as a certified MBE by the District on June 24, 1985.

■ The court further will order that the defendants may not suspend or revoke Cornelius' MBE status without first providing the firm with adequate predeprivation notice and hearing. A full adversarial, evidentiary hearing is not required. *See Cleveland Bd. of Educ. v. Loudermill, supra,* 105 S.Ct. at 1495–96. If the defendants choose to provide Cornelius with such a hearing, however, the requirements of due process certainly will be met.

The court's order will in no way limit the defendants' authority to suspend or revoke the status of Cornelius as a certified MBE provided such action is taken in conformity with the requirements of the due process clause.

To ensure that Cornelius is restored to the position it held before being deprived of its MBE status, the defendants will also be ordered to include the firm in all future directories and documents published by the defendants or their respective agencies which list certified MBEs. The court finds it unnecessary to order the defendants also to notify general contractors individually by special written notice that Cornelius' MBE status has been restored.

## C. Costs and Attorney Fees

The plaintiffs also seek their costs and attorney fees in this action pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988. Because final judgment has not yet been entered in this case, they have not yet submitted their bill of costs or their application for attorney fees. The plaintiffs should submit these items in conformity with Federal Rules of Civil Procedure and the local rules of this district following the entry of final judgment; these matters will then be resolved by the court.

Therefore, IT IS ORDERED that the motion of defendants David B. La Croix and the Milwaukee Metropolitan Sewerage District (District) for judgment notwithstanding the verdict as to the punitive damage award against Mr. La Croix be and hereby is granted.

IT IS ALSO ORDERED that the motion of defendants La Croix and the District for a new trial of the issue of compensatory damages against them be and hereby is denied on the condition that the plaintiffs accept a remittitur of compensatory damages against Mr. La Croix and the District in excess of $18,600, Mr. La Croix and the District to be held jointly and severally liable for this sum. If the plaintiffs do not accept, serve and file the remittitur within 20 days from the date of this decision and order, a new trial will be scheduled by the court to be confined to the issue of compensatory damages against Mr. La Croix and the District.

IT IS FURTHER ORDERED that the motion of defendants La Croix and the District for judgment notwithstanding the verdict or, in the alternative, a new trial be and hereby is denied in all other respects.

IT IS FURTHER ORDERED that the motion of defendants La Croix and the District to amend their answer to assert the affirmative defense of qualified immunity on behalf of Mr. La Croix be and hereby is denied.

IT IS FURTHER ORDERED that the motion of the defendant District for an extension of time to answer the cross-claim of defendant James F. Estes be and hereby is denied.

IT IS FURTHER ORDERED that the motion of defendant Letha F. Harmon for judgment notwithstanding the verdict as to the award of punitive damages against her be and hereby is granted.

IT IS FURTHER ORDERED that the motion of defendants E. Marty Payne, David Manning, and William P. Beckett to strike the plaintiffs' post-trial brief be and hereby is denied.

IT IS FURTHER ORDERED that plaintiff Cornelius Contractors Corporation (Cornelius) be and hereby is entitled to judgment against defendant James F. Estes for compensatory damages of $20,-000 and punitive damages of $45,000.

IT IS FURTHER ORDERED that defendants Harmon, Payne, Manning, and Beckett or their successors in office be and hereby are enjoined to reinstate Cornelius to Minority Business Enterprise (MBE) status within fourteen (14) days of the date of this decision and order, with the same rights and privileges which attached to the firm's status as an MBE prior to the deprivation of that status.

IT IS FURTHER ORDERED that defendants La Croix, Estes, Harmon, Payne, Manning, and Beckett or their successors in office, and the defendant District be and hereby are enjoined from suspending or revoking the MBE status of Cornelius without first, at a minimum, providing Cornelius with:

(1) oral or written notice that such defendants are considering suspension or revocation of the firm's MBE status. Such notice shall state the reasons for the contemplated action and shall inform Cornelius of its right to a hearing to contest the contemplated action. The notice shall be provided at least fourteen (14) days in advance of any such hearing; and

(2) a hearing in which Cornelius is given an opportunity to present its position orally or in writing prior to any suspension or revocation of the firm's MBE status. A written record shall be made of any such hearing and the official(s) presiding at such hearing shall state orally or in writing the reasons for any suspension or revocation of Cornelius' MBE status. The presiding official(s) shall not have been actively involved in the initial consideration of the suspension or revocation of the firm's MBE status.

IT IS FURTHER ORDERED that defendants La Croix, Estes, Harmon, Payne, Manning, and Beckett and their successors in office, and the defendant District be and hereby are affirmatively enjoined to include Cornelius in all future directories and documents published by the defendants or their respective agencies which list certified MBEs, unless Cornelius MBE status is suspended or revoked as a result of a hearing outlined above.

IT IS FURTHER ORDERED that this action be and hereby is dismissed with prejudice as to defendants County of Milwaukee, Wisconsin Department of Natural Resources, and Wisconsin Department of Development.

IT IS FURTHER ORDERED that the plaintiffs be and hereby are entitled to their costs and attorney fees in this action. The taxing of costs and attorney fees shall be stayed pending either the plaintiffs' acceptance of the remittitur or the resolution of the partial new trial.

IT IS FURTHER ORDERED that final judgment shall be entered in accordance with the court's mandate upon either the plaintiffs' acceptance of the remittitur or the resolution of the partial new trial.