Isaac J. CORNELIUS and Cornelius Contractors Corp., Plaintiffs,

v.

David B. LA CROIX, et al., Defendants.

No. 83-C-470.

United States District Court, E.D. Wisconsin.

Nov. 4, 1986.

Mark Camp, Milwaukee, Wis., for plaintiffs.

James Petersen, Milwaukee, Wis., for defendants.

### DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Plaintiffs Isaac J. Cornelius and Cornelius Contractors Corporation (Cornelius) filed this action on March 30, 1983. Plaintiffs' complaint alleged that the defendants, Milwaukee Metropolitan Sewerage District (District), and various individual officers of the District, summarily deprived Cornelius, under of color of state law, of its minority business enterprise (MBE) status. The plaintiffs further alleged that this deprivation constituted a violation of seventeen constitutional and statutory provisions.

Early in this case, I entered a decision and order dated November 29, 1983, which narrowed the issues to be resolved. In that decision, I determined that MBE certification is sufficiently like welfare and licensing benefits to be treated similarly under the fourteenth amendment. I concluded that MBE certification, like welfare and licensing benefits, is to be considered a constitutionally protected property interest. *Accord Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Freitag v. Carter,* 489 F.2d 1377 (7th Cir.1973). Pursuant to that determination regarding the property interest character of MBE status, this case proceeded as a cause of action under 42 U.S.C. sec. 1983.

The original trial in this case was held June 17–21, 1985. It culminated in a jury verdict in favor of the plaintiffs and a compensatory and punitive damage award in the aggregate sum of $160,000.

Defendants David La Croix and the District, filed several post-trial motions regarding the damage award. On April 3, 1986, I granted their motion for judgment notwithstanding the verdict with regard to punitive damages. I denied their motion for a new trial on compensatory damages; this denial, however, was conditioned upon the plaintiffs' acceptance of a remittitur of the jury verdict on compensatory damages in excess of $18,600. The plaintiffs in effect, rejected my remittitur offer. Accordingly, a second trial to determine the extent of compensatory damages due to the plaintiffs from defendants La Croix and the District was held on July 30, 1986. This second trial on damages was to the court. Post-trial briefs were submitted and this matter is now ready for decision.

Based on the record, proceedings in the first trial, stipulations, and testimony elicited at the second trial on compensatory damages, I find the defendants, Milwaukee Metropolitan Sewerage District and David La Croix, jointly liable for the damages arising from the defendants' failure to afford the plaintiffs procedural due process. I adjudge the amount of damages to be $24,997.05, representing the amount of lost

profits on three District subcontracts cancelled shortly after the defendants' unconstitutional conduct.

### Background

Cornelius Contractors Corporation was founded in 1980. To a substantial degree, its business has been to perform small masonry services as a subcontractor on the contracts of public agencies for which MBE goals exist. The District is one such agency. Indeed, until March 1983, the District listed Cornelius as an MBE subcontractor eligible to fulfill District MBE goals. However, by letter dated March 17, 1983 from David La Croix, the District unilaterally revoked Cornelius' MBE listing with the District.

At the time that Cornelius received word of this MBE decertification, it had orally agreed to provide masonry services for Super Excavators, a general contractor, on three District jobs. The aggregate value of these jobs for Cornelius was $213,650. On March 23, 1983, the District notified Super Excavators that Cornelius was no longer a certified MBE for District work. Within days of this notification, Super Excavators cancelled its agreements with Cornelius and substituted other MBE firms to fulfill the District's MBE goals. Time was of the essence for Super Excavators on this matter because it was required, by the District, to submit a list of MBE subcontractors that it planned to use on the three jobs no later than March 28, 1983.

At the second trial on damages, evidence was presented indicating that, in addition to the loss of the three District subcontracting jobs, Cornelius suffered a serious economic decline for the fiscal years 1983, 1984, 1985.

### Analysis

In presenting their respective cases on compensatory damages, neither the plaintiffs nor the defendants have delineated between the defendant David La Croix and defendant Milwaukee Metropolitan Sewerage District. I, therefore, will not purport to distinguish between these codefendants.

Any references to defendants or to "the District" throughout my analysis of damages in this matter shall be understood to mean both Mr. La Croix and the District, and the two shall be jointly liable.

■ Damages in Sec. 1983 cases are designed to compensate a plaintiff for injuries caused by the constitutional deprivation at issue. *Memphis Community School Dist. v. Stachura,* — U.S. —, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The Supreme Court's decisions on this matter leave "no room for non-compensatory damages measured by the jury's perception of the abstract 'importance' of a constitutional right." *Memphis Community School Dist., supra,* 106 S.Ct. at 2544. In the event a plaintiff has been constitutionally deprived, but unable to show actual injury, nominal damages are recoverable in order to vindicate his constitutional rights. *See Carey, supra,* 435 U.S. at 266–67, 98 S.Ct. at 1053–54. However, civil rights plaintiffs are not barred from an award of substantial, compensatory damages just because the monetary value of a particular injury is difficult to ascertain. *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547, 1559 (7th Cir.1986). Thus, if possible, I must ascertain the monetary value of Cornelius' injuries suffered as a result of the District's due process violation.

■ 42 U.S.C. Sec 1983 gives rise to "a species of tort liability," *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). Accordingly, common-law rules of tort damages must be adapted to section 1983 cases. *See Carey, supra,* 435 U.S. at 258, 98 S.Ct. at 1049. I glean two fundamental principles from common-law rules of tort damages which may be applied to this section 1983 case: (1) Damages must be proved to a reasonable certainty, and (2) damages are not recoverable if they are too remote or are not proximately caused by the defendant's conduct. *See D. Dobbs,* Remedies Sec. 3.2, at 139 (1973).

■ Applying these general rules, I turn first to the plaintiffs' theory of damages which is based on the testimony of Dr. Richard Perlman. Dr. Perlman applied theories of economic analysis to calculate Cornelius' loss of expected business profit. Lost profits have been awarded and acknowledged as an appropriate measure of damages in section 1983 cases. *See Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980). Nevertheless, one might reasonably question the reliability of a theory purporting to predict approximately two years' lost profits for a relatively new business, *see* D. Dobbs, *supra* at sec. 3.3, at 154–55. However, I find it to be unnecessary to decide whether Dr. Perlman's calculations of lost profits are convincing to a reasonable certainty. Thus, I do not reject Dr. Perlman's analysis because it is uncertain or speculative. All doubts as to uncertainty would have to be resolved against the District, as wrongdoer. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

Rather, I reject Dr. Perlman's calculations because I find that they reflect losses that were not proximately caused by the injury at issue here, namely, procedural deficiency. The plaintiffs, themselves, characterize Dr. Perlman's analysis as one which predicts "receipts of Cornelius which would have been received but for decertification for the fiscal years 1983 through 1985...." Plaintiffs' Post Trial Brief at 6.

Does the record in this case support the view that the defendants' departure from procedural requirements in this case gave rise to economic losses for two years valued in excess of $120,000? I think not. The only constitutional deprivation identified in this case is a deprivation of procedural due process. While Dr. Perlman's analysis may reasonably measure injuries "attributed to the deprivation rather than the deficiencies in procedure, ... the injury caused by a justified deprivation ... is not properly compensable under sec. 1983." *Carey, supra*, 435 U.S. at 263, 98 S.Ct. at 1052. In the instant case, there is no deter-

mination as to the justifiability of Cornelius' decertification; such decertification, therefore, is not the injury to be valued for purposes of arriving at a damage award. Accordingly, I deem Dr. Perlman's analysis of Cornelius' economic loss to be too remote to be recoverable in this case of procedural failure.

■ Although I determine that Cornelius is not entitled to economic loss damages as calculated by Dr. Perlman, I also conclude that Cornelius' injury warrants more than mere nominal damages because I am satisfied that the evidence supports a finding of compensable damage. Cornelius lost three subcontracting jobs as a direct result of the District's procedural laxity. Testimony of Thomas J. Muth, president of Super Excavators, Inc., Second Trial Transcript, at 19. In fact, within days of Cornelius' decertification by the District, Super Excavators cancelled its agreements with Cornelius. This immediate reaction can be attributed to the District's conduct. The proximity in time between the District's unilateral decision regarding Cornelius' MBE status and the action, required by the District, regarding its MBE subcontractors, tends to establish a proximate cause relationship. Thus, I find that Cornelius is entitled to profits lost as a result of the loss of the three Super Excavator subcontracts in March 1983.

While I am inclined to the view that the subcontracts were enforceable, I will calculate the plaintiffs' damages in this regard without a formal ruling thereon. This is not a tortious interference with contract, nor contract breach, action. It has already been determined that the District's conduct unconstitutionally deprived Cornelius of a property interest without due process of law. The court's task is to measure the damages flowing from that *constitutional* wrong.

Calculating lost profits on the three lost jobs would be a relatively simple matter if a profit percentage figure could be ascertained. Unfortunately, I am presented with variant figures for Cornelius' profit

margin during the relevant time period. According to Dr. Perlman, just prior to the District's actions in 1983, Cornelius' gross profit margin was 11.7 percent. Dr. Perlman's estimate is based on his analysis of the books, records and tax returns of Cornelius. According to Mr. Cornelius, the average profit percentage enjoyed by his company in 1983 was somewhere between 10 and 15 percent.

Defendants assert, however, that the Cornelius profit margin for March 1983 should be calculated at 5 percent. I disagree. The defendants' estimate of the profit margin is based on the profit percentage for one of Cornelius' jobs. In fact, this allegedly illustrative job was a peculiar type of job for which Cornelius was guaranteed 5 percent profit regardless of errors. Dr. Perlman's and Mr. Cornelius' profit percentage estimates are, by contrast, derived from more comprehensive analyses of the Cornelius business in 1983.

As Mr. Cornelius' estimate is generally consistent with Dr. Perlman's calculation of 11.7 percent profit, I am persuaded that the 11.7 percent figure is neither unfair nor unrealistic. Accordingly, I calculate Cornelius' lost profits to be 11.7 percent of $213,-650, the aggregate value of the three lost subcontracts with Super Excavators. Thus, Cornelius is entitled to actual damages in the amount of $24,997.05.

## CONCLUSION

Based on the foregoing analysis, I find that the plaintiffs, Isaac J. Cornelius and Cornelius Contractors Corporation, are entitled to compensatory damages from the defendants, David La Croix and the Milwaukee Metropolitan Sewerage District, for injuries sustained by the plaintiffs as a result of the defendants' summary denial of MBE status to the plaintiffs in violation of the fourteenth amendment.

Plaintiffs are also entitled to costs and attorneys' fees pursuant to 42 U.S.C. sec 1988. Plaintiffs should submit their bill of costs and application for fees in accordance with Rule 54(d), Federal Rules of Civil Procedures and the Local Rules 9.01–9.04 of

this district following the clerk's entry of judgment in this action. These matters will then be resolved by the court.

Therefore, IT IS ORDERED that judgment be and hereby is entered in favor of the plaintiffs and against defendants, David La Croix and Milwaukee Metropolitan Sewerage District, jointly and severally in the amount of $24,997.05, plus costs and attorney fees.