Isaac J. CORNELIUS and Cornelius
Contractors Corp.,
Plaintiffs–Appellees,

v.

David B. LaCROIX and Milwaukee Met-
ropolitan Sewerage District,
Defendants–Appellants/Cross–Appellees.

Nos. 87–1402, 86–1463.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1987.

Decided Jan. 14, 1988.

As Amended on Denial of Rehearing
Feb. 12, 1988.

James H. Petersen, Milwaukee Metropolitan Sewerage Dist., John Jorgensen, Office of Corp. Counsel, Milwaukee, Wis., for defendants-appellants/cross-appellees.

Mark M. Camp, Pfannerstill & Camp, Wauwatosa, Wis., for plaintiffs-appellees.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

This case presents a different aspect of the problems presented in *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667 (7th Cir.1987). That recent case held in part that a certified minority business enterprise ("MBE") probably had a property interest in retaining MBE status during the period granted by the certification. *Id.* at 677. Not all MBE programs are alike; thus, although we apply *Baja Contractors* we reach a contrary result, reversing the district court's determination that plaintiff Cornelius Contractors Corp. ("Cornelius") had a property interest in MBE status.

I.

The facts are laid out in Judge Gordon's opinion on various post-trial motions. *See Cornelius v. LaCroix*, 631 F.Supp. 610, 616–17 (E.D.Wis.1986).[1] Defendant Milwaukee Metropolitan Sewerage District (the "District"), established an MBE policy in 1978, the stated purpose of which was "to ensure that small minority and women's business enterprises will be allowed the maximum feasible opportunity to compete for contracts and subcontracts." District's Appendix at 282. The policy required prime contractors to increase the participation of MBEs in District projects. The policy statement defined an "MBE" as "a business, at least 51 percent of which is *owned and controlled* by minority group members or women." *Id.* (emphasis added). The "control" provision required minority owners to exercise actual day-to-day management.

Prior to July 1982, the District had no formal MBE certification process. The District did, however, allow firms to register as purported MBEs. The District then published a list of businesses that filed the registration forms. The list was published to help prime contractors locate possible MBEs for their projects. It contained the following disclaimer:

> The attached list of contractors is for informational purposes only. It is a list of contractors who have indicated to the District that they come within the definition of a Minority Business Enterprise and that they are interested in performing work for the District either directly or as subcontractors. Its inclusion does not imply the endorsement or approval of the Metropolitan Sewerage District or of the county of Milwaukee or either of its Commissions, the Department of Natural Resources, [or] the Environmental Protection Agency in any way of any of the firms listed or even that they are minority business enterprises.

District's Opening Brief at 9.

In 1981, plaintiff Cornelius filed a registration form that effected its automatic inclusion in the directory. Cornelius was fifty-one percent owned by Isaac Cornelius, a Native American. Four white male principals of Super Excavators, Inc., a prime contractor, owned the other forty-nine percent. The five stockholders comprised Cornelius' board of directors. Each director had one vote and decisions were made by majority vote.

Cornelius benefited greatly from the MBE program. The company's gross receipts increased twentyfold over a three-year period. By early 1983, eighty percent of Cornelius' work was on projects where prime contractors listed it as an MBE. Super Excavators was usually the prime contractor on those projects. The District accepted prime contractors' bids without challenging the use of Cornelius to satisfy the prime contractors' MBE requirements.

---

1. The district court's earlier denial of the defendants' motion to dismiss is reported at 575 F.Supp. 1392 (E.D.Wis.1983). That opinion is not relevant to this phase of the proceedings. When we refer to the district court opinion, we refer to the ruling on post-trial motions.

In July 1982, the District revised its MBE policy, requiring an extensive certification process "to reduce the potential for fraud and abuse." District's Appendix at 285. On October 15, 1982, the District began implementation of this new process by sending a letter to all contractors that had registered as MBEs or had been used as MBEs on past contracts. The letter informed contractors that prior registrations were no longer effective and invited them to apply for MBE certification under the new procedures. District's Appendix at 279.

Cornelius applied for certification in November 1982. While the application was pending the District continued to allow prime contractors to use Cornelius as an MBE on projects. After an exchange of information, the application was completed on January 24, 1983.

On March 17, 1983, the District sent Cornelius a letter denying MBE certification. District's Appendix at 281. The letter gave two reasons for the denial. First, Isaac Cornelius was the only minority person among the five board members. Because the company was governed by majority vote, the white directors effectively "controlled" Cornelius. Second, the principal business administrator was one of the white board members. Arguably these factors were in violation of the requirement that minority members exercise actual management. The letter stated that Cornelius could "contest these findings" until April 17, 1983, but it did not outline the procedures for review. Finally, it stated that, unless challenged, the denial would be in effect until September 17, 1983, after which time Cornelius would be free to reapply.

The March 17 letter is the basis of Cornelius' claim. Instead of seeking review by the District, Cornelius instituted this action under 42 U.S.C. § 1983 (1982)[2] alleging that the District and its employees and agents deprived Cornelius of its property without due process of law.[3] Liability and damages were tried to a jury; the court reserved the question of equitable relief. The jury found for Cornelius on the due process claim. It awarded compensatory damages of $20,000 each against the District and two individual defendants, James Estes and David La Croix.[4] The jury also awarded punitive damages of $50,000 against Letha Harmon, $5,000 against La Croix, and $45,000 against Estes. The district court set aside the punitive damage assessments against La Croix and Harmon. It also ordered a partial remittitur of the compensatory damages assessed against the District and La Croix.[5] Cornelius rejected the remittitur; the compensatory damage issue was retried to the court, which awarded $24,997.05 in total compensatory damages against La Croix and the District. *See Cornelius v. La Croix,* 646 F.Supp. 1106, 1110 (E.D.Wis.1986). The court also granted injunctive relief. *Cornelius,* 631 F.Supp. at 625–26.

**2.** Section 1983 reads:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C. § 1983 (1982).

**3.** The original complaint included other charges and other defendants, but they all settled or were dismissed along the way. None is relevant to this appeal.

**4.** Estes, an employee of an outside consulting firm, headed the District's Minority Affairs Group. Estes supervised La Croix, a District employee. Another individual defendant, Letha Harmon, was coordinator of the Milwaukee County MBE program.

**5.** Estes, appearing pro se, did not challenge the awards of $20,000 compensatory damages and $45,000 punitive damages against him. Those damages are also not challenged here, although Cornelius seeks reversal of the district court's determination that the District is not jointly and severally liable for Estes' damages. *See infra* p. 212.

The District and La Croix appeal the denial of judgment notwithstanding the verdict ("JNOV") as to liability and with respect to the damage awards against them. The District also appeals the injunction. Cornelius cross-appeals, arguing that the punitive damage awards against Harmon and La Croix are supported by the evidence, and that the District should be liable for Estes' damages.

## II.

To establish a due process violation, Cornelius must meet two requirements. First, it must show that it has a property interest. Second, it must show that it was deprived of that interest without due process of law. *See Baja Contractors*, 830 F.2d at 675–76. The first prong is dispositive here. We hold that Cornelius had no protectible property interest in MBE status prior to March 1983; so we reverse the judgment as to liability and damages. We also reverse the injunction and reject Cornelius' cross-appeal.

The due process clause of the fourteenth amendment does not create property rights. Rather, it protects property interests defined by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Supreme Court in *Roth* explained, in somewhat abstract language, the distinction between "property" and mere expectation:

To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.* The key phrase in that passage is "legitimate claim of entitlement." Cornelius has a property interest in a benefit if the company is legitimately entitled to that benefit. *See Baja Contractors*, 830 F.2d at 676.

This circuit has on occasion been guided by Judge Hufstedler's definition of "legitimate claim of entitlement." *See Geneva Towers Tenants Org. v. Federated Mortgage Investors*, 504 F.2d 483, 495–96 (9th Cir.1974) (Hufstedler, J., dissenting) ("An entitlement is a legally enforceable interest in receiving a governmentally conferred benefit, the initial receipt or termination of which is conditioned upon the existence of a controvertible and controverted fact."). As reformulated by this court, the rule states that "a legitimate claim of entitlement is created only when the statutes or regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Eidson v. Pierce*, 745 F.2d 453, 459–60 (7th Cir. 1984). More plainly, it means "an entitlement that stands or falls on the application of rules to facts." *Scott v. Village of Kewaskum*, 786 F.2d 338, 339–40 (7th Cir. 1986).

In a practical sense, "property is what is securely and durably yours under state . . . law as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir.1983). The *Roth* and *Geneva Towers* language is nothing more than an attempt to guide this common sense determination. People have a legitimate claim of entitlement to keep that which presently securely belongs to them. Where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement. The real issue here is what Cornelius "securely and durably" held prior to the March 1983 rejection notice.

The district court instructed the jury that it could find Cornelius had a property interest in MBE status if it found Cornelius "was registered with the [District] and was recognized by the defendants as an MBE." District's Appendix at 275. Only one outcome was possible under this instruction, because the defendants never really contested either of these points. Cornelius

registered with the District. The District also "recognized" Cornelius as an MBE for several projects, at least to the extent that it did not affirmatively challenge the company's claim of MBE status. These two elements, however, do not create an entitlement to *future* certification. The district court's instruction does not accurately state the governing legal principles.

Prior to October 1982, the District "certified" MBEs, if at all, on a contract by contract basis. It had no formal certification process. Cornelius registered for inclusion in a directory of firms claiming MBE status. By use of a disclaimer, the District specifically and clearly rejected any notion that inclusion in the listing constituted acknowledgment by the District of MBE status. Each time a prime contractor used Cornelius on a project, it had to gain District approval. There was *no* evidence that approval for one project was proof of MBE status beyond that transaction. Acceptance was a ticket good for one ride only; the next ride required a new ticket. *Cf. Smith v. Allwright*, 321 U.S. 649, 669, 64 S.Ct. 757, 768, 88 L.Ed. 987 (1944) (Roberts, J., dissenting).

The District took reasonable steps to make its policy clear. The directory of proposed MBEs contained a clear and unambiguous disclaimer stating that inclusion was not approval. The policy required prime contractors to submit proof of Cornelius' MBE status each time they wanted to use Cornelius on a project. In fact, the record is devoid of evidence that the District had any sort of long-term certification mechanism prior to October 1982.

Cornelius is asking us to find that it had a legitimate entitlement to certification solely because it had been accepted as an MBE on past contracts. This argument has been consistently rejected by the courts. For example, this court recently held that a company had no right to renewal of a food service contract solely by virtue of its use on past contracts. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir.1987). Likewise, in *Roth*, the Supreme Court refused to find that a non-tenured teacher had a right to continued employment. *Roth*, 408 U.S. at 578, 92 S.Ct. at 2709 ("the respondent surely had an abstract interest in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract for employment") (emphasis in original). In *Szabo*, this court stated the rule: "A person has a 'property' interest in an expectation of renewal only if state law so provides. A unilateral expectation of renewal is not a property interest." *Szabo*, 823 F.2d at 1080 (citations omitted). The only "law" governing the District MBE program was the District's policy, which created no right of renewal.[6]

Our conclusion is buttressed by this court's decision in *Baja Contractors*. The MBE program at issue in *Baja Contractors* involved a federally approved annual certification process. 830 F.2d at 668–69. The plaintiff was certified under that procedure; later that certification was rescinded. *Id.* at 670. Because Baja Contractors had already been certified as an MBE by the City, it had a legitimate claim of entitlement to continued certification for the one year certification period. Reviewing the grant of a preliminary injunction against withdrawal of certification, the court held that Baja "established a likelihood of showing that it has a protected property interest in MBE certification *because the City had already conferred that benefit upon it.*" *Id.* at 677 (emphasis supplied); *see also*

---

6. Cornelius' briefs tend to distort the record by alleging that federal law and regulations mandated and governed the District's MBE program. *See, e.g.,* Cornelius' Opening Brief at 8. This assertion lacks any reference to the record and is unsupported by the facts. *See Cornelius*, 631 F.Supp. at 617 (rejecting the contention). This is just one of several instances, in briefs and at oral argument, where counsel for Cornelius shows a disturbing willingness to misrepresent the record. A more blatant example is the repeated assertion at oral argument that the March 1983 rejection letter gave neither reasons for denial nor opportunity for later review. The bulk of the letter gave reasons for the denial; the notice also stated that Cornelius could challenge the determination. District's Appendix at 281. Distortions and misrepresentations *never* help a client's case; we admonish counsel to be more forthright in the future.

*Interstate Material Corp. v. City of Chicago,* 150 Ill.App.3d 944, 103 Ill.Dec. 593, 501 N.E.2d 910 (1st Dist.1986).

By contrast, Cornelius was *never* certified by the District prior to the March 1983 denial of certification. It therefore had no legitimate entitlement to continued MBE status. Undoubtedly Cornelius desired MBE certification, but at that time there was no legal rule entitling it to certification, either indefinitely, as apparently is the case under present District policy, or for a fixed timespan, as in *Baja Contractors.*

Cornelius failed to meet one of the basic requirements for a due process claim—a protectible property interest. We therefore reverse the denial of JNOV as to the District and La Croix. We affirm the decision setting aside punitive damages against La Croix and Harmon.

### III.

■ We are left with one issue. One individual defendant, James Estes, has not appealed the verdict against him. After trial, Cornelius filed a motion under Fed.R. Civ.P. 59(e) to amend the judgment to require the District to pay Estes' damages. The district court held that the District was not liable for Estes' damages. Cornelius challenges that determination.

We will reverse only if the district court abused its discretion. *United States Labor Party v. Oremus,* 619 F.2d 683, 692 (7th Cir.1980). There was no abuse here. The Wisconsin indemnification statute, Wis.Stat. § 895.46(1)(a) (1985–86), says a political subdivision shall pay damages of its officers and employees. The parties stipulated that Estes was not an employee of the District. *See* Stipulated Facts, Cornelius' Appendix at ii. He was employed by an outside consulting firm. The District is not liable for his damages.

### IV.

Cornelius had no legitimate claim of entitlement to MBE status. We reverse the judgment with respect to liability, damages (except as to Estes) and injunctive relief; we affirm the judgment insofar as it denies

punitive damages and denies Cornelius' motion to hold the District liable for Estes' damages. Costs will be charged to the plaintiffs.

AFFIRMED IN PART AND REVERSED IN PART.