**ARMSTRONG STEEL ERECTORS, INC., Appellant,**

v.

**OHIO DEPARTMENT OF TRANSPORTATION, Appellee.**

[Cite as *Armstrong Steel Erectors, Inc. v. Ohio
Dept. of Transp.* (1990), 61 Ohio App.3d 800.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–873.

Decided April 26, 1990.

*Millisor & Sabo, Roger L. Sabo* and *Gwen M. Ralph,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Michael L. Squillace, Ronald H. Snyder* and *Amy R. Goldstein,* for appellee.

STRAUSBAUGH, Judge.

This is an appeal by plaintiff from a judgment rendered by the Ohio Court of Claims which dismissed plaintiff's complaint pursuant to Civ.R. 41(B)(2). The claims court concluded that plaintiff's evidence failed to establish a protectible property interest for the taking of which it was entitled to compensation.

Plaintiff, Armstrong Steel Erectors, Inc., is engaged in the business of steel erection primarily for bridges. Its primary source of work is by subcontract let by prime contractors for the construction of roads and bridges. Defendant, the Ohio Department of Transportation, operates two programs designed to assist minorities to compete in the marketplace by enabling them to competitively bid on construction projects. One of the programs administered by defendant arises pursuant to the Surface Transportation Assistance Act of 1982 (96 Stat. 2097 *et seq.*). Section 105(f) (96 Stat. at 2100) of that Act provided that federal funding assistance to the states was contingent upon a showing that at least ten percent of the monies appropriated were expended with small business concerns owned and operated by socially and economically disadvantaged individuals. In order to bring Ohio into compliance with the Surface Transportation Assistance Act, the General Assembly enacted R.C. 5525.011 in 1983. Pursuant to the directive of R.C. 5525.011, defendant promulgated Ohio Adm.Code Chapter 5501.

In early 1984, plaintiff was acquired by Michael Rath, an American Indian and a member of the Minnesota Chippewa tribe. At the time he acquired plaintiff, Rath was president and a minority shareholder in a family-owned construction business, Fort Defiance Construction. In conjunction with his activity with Fort Defiance Construction, Rath was familiar with the certification process available for minority-owned business enterprises. Accordingly, Rath in August 1984 applied for and received certification that plaintiff was a Disadvantaged Business Enterprise ("DBE"). The certification informed plaintiff that it was certified for a period of one year effective August 31, 1984.

Subsequently, in 1985, defendant revamped its procedures for obtaining certification in order to comply with the more stringent requirements regarding documentation of a firm's status promulgated by the United States Department of Transportation. Accordingly, defendant revised and expanded its application form, which plaintiff received sometime in mid-July 1985. The top of the fifteen-page form indicated that plaintiff's certificate was due to

expire in August 1985. The form also advised that all items were to be answered, unless inapplicable, and that failure to respond to any question could result in the denial of certification. Plaintiff obtained as much of the necessary documentation as was available and, upon completion of the form, forwarded it to defendant in August 1985. The application was received by defendant on August 23, 1985 and plaintiff was so informed the following day and that, if no additional information was necessary, the review process would be completed within forty-five days. Upon the expiration of the forty-five-day period, plaintiff contacted defendant to inquire as to the status of his application. Following a series of communications between the parties, including the statement of an official of defendant that it was running behind on its review of applications, plaintiff was informed on November 6, 1985 that fourteen additional items or documents were necessary in order for defendant to verify plaintiff's eligibility for certification. Included with those documents was an "authorization for release of information" form which indicated that it had been prepared in July 1985, but was not part of the application document sent to plaintiff. Plaintiff was also required to submit a formal bonding application even though it had never been required to apply for one. Each of the documents requested required a certain amount of time to prepare.

On the same day plaintiff received this letter, bid letting for a construction project took place for which plaintiff submitted price quotations. While plaintiff was preparing the requested information and documents, contracts were let by defendant to the prime contractors. However, because plaintiff was no longer certified as a DBE, plaintiff's competitors were awarded the work for which plaintiff had bid. Although plaintiff sought declaratory injunctive relief in the United States District Court, the complaint was subsequently voluntarily dismissed. Ultimately, on January 3, 1986, plaintiff submitted twenty-two documents to defendant. Plaintiff was notified on January 13, 1986 that it had received its certified status. This notification also indicated that it was the only notification plaintiff would receive prior to the expiration date of its current certificate.

Plaintiff then commenced the instant suit in the Ohio Court of Claims on March 19, 1986. Plaintiff alleged that when defendant failed to act in a timely manner upon its application for recertification, it deprived plaintiff of its property right in continuing to be treated as a certified DBE without due process of law. Plaintiff further alleged that this conduct was violative of Section 1983, Title 42, U.S.Code, in that it deprived plaintiff of its constitutional rights and certain statutory privileges including Section 23.53(f), Title 49, C.F.R. Plaintiff requested judgment in its favor against defendant in the amount of $104,508.36. The matter was tried to the court on August 15 and 16, 1988, and at the conclusion of plaintiff's case-in-chief, defendant moved for

a dismissal pursuant to Civ.R. 41(B)(2). The claims court, on August 22, 1988, entered its order of dismissal for the reason that plaintiff failed to show a right to relief based upon the pleadings, evidence, and arguments.

Plaintiff now appeals and sets forth the following three assignments of error:

"1. The Court of Claims erred in granting defendant's motion to dismiss at the close of plaintiff's case.

"2. The Court of Claims erred in failing to find that Appellant had an ongoing property interest in certification as a disadvantaged business enterprise.

"3. The Court of Claims erred in failing to find that the actions of the State of Ohio, in failing to timely act upon an application involving recertification of an ongoing business enterprise, constituted an improper taking."

Although plaintiff makes three assignments of error, in fact, only two issues are before this court. First, plaintiff contends under its second assignment of error that it had, contrary to the finding of the claims court, a protectable property interest in having its status as a certified DBE renewed within thirty days of the expiration of its prior certification. It is plaintiff's position that the various statutory and regulatory enactments create a legitimate expectation of continued certification among companies previously certified as a bona fide DBE. Plaintiff further maintains that this property interest can only be terminated, according to the provision of the Ohio Administrative Code, subsequent to a hearing as provided in R.C. Chapter 119. Since no hearing was held in this case, plaintiff argues that it had a legitimate property interest in continuing to be certified as a DBE.

Building upon its contention regarding its property interests, plaintiff next argues in its third assignment of error that the state improperly "took" this property without just compensation in a manner that would subject the state to liability and damages. Plaintiff argues that the evidence at trial clearly established the taking of plaintiff's property interest for public use. Specifically, plaintiff argues that the failure of defendant to act on plaintiff's application for recertification constituted a taking of its property and, because the alleged purpose for the delay was defendant's desire to eliminate "fronts," that taking was for public use.

■ At the outset, we note that to the extent plaintiff's complaint alleges conduct in violation of Section 1983, Title 42, U.S.Code, such a claim is properly dismissed in the Court of Claims since it has been determined that the state is not a person for the purposes of a Section 1983 violation. See *Burkey v. Southern Ohio Correctional Facility* (1988), 38 Ohio App.3d 170,

528 N.E.2d 607; *Will v. Michigan Dept. of State Police* (1989), 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45.

■ We next address plaintiff's contention that defendant's failure to act in a timely manner upon its application for recertification deprived plaintiff of its property right in continuing to be treated as a certified DBE without due process of law. In order to establish a due process violation, a plaintiff must satisfy two requirements. First, it must show that it has a protected property or liberty interest. Second, it must demonstrate that it was deprived of that interest by government action without due process of law. *Cunningham v. Adams* (C.A.11, 1987), 808 F.2d 815, 820; *Baja Contractors, Inc. v. Chicago* (C.A.7, 1987), 830 F.2d 667, 675–676; *Cornelius v. LaCroix* (C.A.7, 1988), 838 F.2d 207, 210. In the present case, we find the first requirement to be dispositive of plaintiff's appeal.

The Fifth and Fourteenth Amendments to the United States Constitution prohibit the deprivation of liberty or property without due process. While the Due Process Clause does not create property rights, it does protect those property interests created and defined by "existing rules or understandings that stem from an independent source such as state law * * *." *Roth v. Board of Regents* (1972), 408 U.S. 564, at 577, 92 S.Ct. 2701, at 2709, 33 L.Ed.2d 548, at 561. In *Roth,* an untenured assistant professor at a state university was informed that he would not be rehired for the following academic year. Roth alleged that the university's failure to give notice of any reason for nonretention and an opportunity for hearing violated his right to procedural due process. In essence, Roth contended that he had a property interest in continued employment even though his initial employment contract was for only one year. The court stated:

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

" * * * Undeniably, the respondent's re-employment prospects were of major concern to him—concern that we surely cannot say was insignificant. And a weighing process has long been a part of any determination of the *form* of hearing required in particular situations by procedural due process. But, to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake. * * *" (Citations and footnotes omitted; emphasis *sic.*) *Id.* at 569–571, 92 S.Ct. at 2705–2706, 33 L.Ed.2d at 556–557.

The Supreme Court rejected Roth's claim that he had any property right in reemployment and discussed what constitutes a protected property interest:

" * * * To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * *

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. * * *" *Id.* at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

Thus, in light of the Supreme Court's decision in *Roth, supra,* it is clear that property interests are created and their limitations are defined by an independent source. Pursuant to Section 23.51(c)(1), Title 49, C.F.R., defendant has been provided with the authority to develop an independent certification process from that contained in the applicable federal regulations. Specifically, former Ohio Adm.Code 5501:5–1–02(J) stated that certification or recertification as a DBE shall be for a period not to exceed one year. Accordingly, we find that plaintiff has failed to demonstrate a protected property interest in a future year's certification as a DBE. As in *Roth, supra,* plaintiff merely has a unilateral expectation of recertification and has failed to demonstrate a "legitimate claim of entitlement" thereto.

We find support for our decision in *Baja, supra.* In that case, the plaintiff had been certified as a minority business enterprise and later, during the approved certification period, that certification was rescinded. Since the plaintiff had already received its certification as a minority business, it had a legitimate claim of entitlement to continued certification for the one-year period. The court in *Baja, supra,* held at 677, that the plaintiff has established a protected property interest in its preferred status as a minority business under the certification process since the defendant had already conferred that benefit upon it.

Subsequently, in *Cornelius, supra,* the Seventh Circuit Court of Appeals was again faced with the question as to whether the plaintiff had demonstrated that it had a protectible property interest in its continued minority business status. The plaintiff argued that it, like the plaintiff in *Baja, supra,* had a legitimate entitlement to certification as a minority business enterprise on the basis that it had been accepted as a minority business enterprise on previous contracts. However, the court held that the plaintiff had no protectible property interest in a minority business enterprise status despite the fact that it had previously been recognized for several projects on a contract-by-contract basis as a minority business firm. In rejecting the plaintiff's argu-

ment that acceptance as a minority business enterprise on prior contracts created a legal entitlement to future certification, the court reasoned that while the plaintiff may have desired minority business certification, there existed no legal rule entitling it to such certification, either indefinitely, or for a fixed time span as was the case in *Baja, supra.*

In an analogous case, the Sixth Circuit Court of Appeals conducted an analysis of the property interests created in the food stamp program as amended by Congress in 1977. *Banks v. Block* (C.A.6, 1983), 700 F.2d 292. In *Banks*, citing both the statutory language and the legislative history of the certification amendments at issue, the court held at 296:

" * * * [I]t is clear that a household's abstract concern or unilateral expectancy in the continuous receipt of food stamps is not enough to create a constitutionally protected interest. In light of the explicit terms of the Food Stamp Act appellants cannot justify a reasonable expectancy of entitlement and that benefits will continue beyond expiration of the assigned certification period. Recipients of food stamps are assigned a specific term of eligibility. On two separate occasions they are informed that their benefits would cease at the end of their certification period. It is further provided that benefits will not extend beyond this period until a new application is completed, eligibility determined, and a new period of certification assigned. *The continuous receipt of benefits beyond certification periods can be nothing more than an unprotected unilateral expectation on the part of the appellants.*" (Emphasis added.)

Similarly, in the present case, plaintiff was specifically informed that its certification existed for a one-year period and that in order to maintain its status as a DBE, it would be necessary that it reapply for certification. Former Ohio Adm.Code 5501:5–1–02(J). Plaintiff was also informed that if it wished to continue in a certified status without lapse, its application for recertification must be filed with defendant at least thirty days prior to expiration of the existing certification. Former Ohio Adm.Code 5501:5–1–02(I). It is clear that the plaintiff does not allege any interruption of its certification during the one-year period for which it was certified but instead claims entitlement to continued certification beyond that one-year period despite explicit statutory language to the contrary. While plaintiff may indeed have a protectible property interest in its preferred status as a certified DBE for the one-year period of its certification, this issue is not before this court. Instead, plaintiff insists that its status as a DBE for the previous year somehow created a protected property interest which entitled it to recertification. We find that while plaintiff can reapply for subsequent certification periods, its anticipated certification as DBE beyond its current certification period is nothing more than an "unprotected unilateral expectation." *Banks,*

*supra,* at 296. Plaintiff would have a property interest in recertification as a DBE only if state law so provided, which it does not. While plaintiff has attempted to distinguish the preceding cases, we are not persuaded by such arguments.

Plaintiff has cited *Lake Erie Construction Co. v. Ohio Dept. of Transp.* (S.D.Ohio 1983), No. C–2–83–934, unreported, in which the court issued a temporary restraining order preventing the defendant from summarily removing a company from the list of certified minority business enterprises. However, we note that this order was issued prior to the promulgation of any state regulations for DBE certification and instead involved the issue of decertification for cause rather than a lapse of certified status upon the expiration of a predefined certification period. Thus, we find *Lake Erie,* to be inapplicable to the present case.

Based on the foregoing, we do not find that the trial court abused its discretion in dismissing plaintiff's complaint as it lacked jurisdiction over the Section 1983 claim presented. We also find that there was no abuse of discretion by the trial court in dismissing plaintiff's claim to the extent plaintiff has alleged a deprivation of a property interest without due process of a type not embodied in a Section 1983, Title 42, U.S.Code violation since plaintiff has failed to demonstrate that it had a protectible property interest. Accordingly, all three of plaintiff's assignments of error are not well-taken and are overruled. The judgment of the Court of Claims is hereby affirmed.

*Judgment affirmed.*

REILLY, P.J., and MCCORMAC, J., concur.