In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2220

REBIRTH CHRISTIAN ACADEMY DAYCARE, INC.,

*Plaintiff-Appellant,*

*v.*

MELANIE BRIZZI and MICHAEL GARGANO,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 12-cv-01067-SEB-DKL — **Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 5, 2016 — DECIDED AUGUST 30, 2016

Before WOOD, *Chief Judge,* and KANNE and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Rebirth Christian Academy Daycare, an Indiana non-profit corporation, ran a child care ministry—a "child care operated by a church or religious ministry that is a religious organization exempt from federal income taxation." IND. CODE § 12-7-2-28.8. A state agency revoked Rebirth's registration after an inspector concluded that the organization had violated several statutory and reg-

ulatory provisions governing registered child care ministries. Rebirth sued state officials for damages and injunctive relief under 42 U.S.C. § 1983, claiming that they had violated the due-process clause of the Fourteenth Amendment by revoking its registration without providing it with an opportunity to be heard. The district court dismissed Rebirth's individual-capacity claims, concluding that qualified immunity protected the defendants from liability for civil damages because they had not violated clearly established law. After the parties developed an evidentiary record on the official-capacity claims, Rebirth ultimately prevailed on its claims for injunctive relief. It now challenges the district court's dismissal of its claims for damages against the defendants sued in their individual capacities. We conclude that, based on the allegations in the complaint, the defendants were not entitled to qualified immunity because they violated clearly established law: the complaint adequately alleges that they deprived Rebirth of a property interest without first providing an opportunity for some type of hearing. Accordingly, we reinstate Rebirth's individual-capacity claims and remand for further proceedings.

## I.

Child care ministries are extensively regulated by the State of Indiana—specifically, by the Bureau of Child Care (a sub-agency of the Division of Family Resources, which is a branch of the Indiana Family and Social Services Administration, *see* IND. CODE §§ 12-13-6-1, 12-13-1-1). Indiana statutes provide that, to operate a child care ministry lawfully, a religious organization must either obtain a li-

cense from or register with the Bureau. *Id.* §§ 12-17.2-6-1 to -2.

A religious organization may procure a license to operate a child care ministry as either a "child care home" (a child care located in a residential building, IND. CODE § 12-7-2-28.6) or a "child care center" (a child care located in a nonresidential building, *id.* § 12-7-2-28.4). To secure either type of license, a provider must submit an application with supporting documents, *id.* §§ 12-17.2-4-3, 12-17.2-5-3; undergo site visits and inspections, *id.* §§ 12-17.2-4-7, 12-17.2-4-15 to -16, 12-17.2-5-6, 12-17.2-5-15 to -16; and get re-licensed every two years, *id.* §§ 12-17.2-4-12(a), 12-17.2-5-12(a).

To operate a registered (as opposed to licensed) child care ministry lawfully, a religious organization must submit an application to the Bureau, *see* Indiana Family & Social Services Administration, *The ABC's of a Child Care Business*, at 7–8 (Nov. 2010), *available at* http://www.in.gov/fssa/files/5236_The_ABCs_of_a_Child_Care_Business.pdf; pay a registration fee of $50, IND. CODE § 12-17.2-6-12; submit an application to Indiana's Department of Homeland Security for the state fire marshal (paying another $50), *id.* § 12-17.2-6-13; *ABC's of a Child Care Business*, *supra*, at 8; and pass inspections by both the State Fire Division Inspector and the Bureau's inspector, IND. CODE §§ 12-17.2-6-4 to -5. (A registered child care ministry must also submit to semiannual inspections, *id.* § 12-17.2-6-4, and re-register annually, *ABC's of a Child Care Business*, *supra*, at 8.) A religious organization that satisfies these requirements is issued a certificate of registration showing that it is authorized to operate a child care ministry without a license.

The state may revoke a child care ministry's certificate of registration only "if the operator or an employee of the child care ministry violates" the statutes or regulations governing registered ministries. IND. CODE § 12-17.2-6-9. A license to operate a child care ministry likewise may be revoked only for a violation of the law. *Id.* §§ 12-17.2-4-33, 12-17.2-5-33. State law affords a procedure for administratively appealing the revocation of a *license* (and allows a licensed child-care provider to continue operating while such an appeal is pending). *See id.* §§ 12-17.2-4-33(b)(1), 12-17.2-4-19 to -22, 12-17.2-5-33(b)(1), 12-17.2-5-19 to -22. But Indiana's statutory scheme does not give providers an administrative opportunity to challenge the Bureau's decision to revoke a *certificate of registration*.

Rebirth obtained a certificate of registration and began operating a child care ministry in late 2009. In mid-2012, a representative of the Bureau conducted an unannounced inspection of the ministry. After the inspection, the Bureau gave Rebirth a document titled "Plan of Improvement," which stated that Rebirth had violated statutes and regulations governing registered child care ministries. The Plan of Improvement alleged eight violations; it also directed Rebirth to cure the purported infractions and submit proof within ten days that it had done so. The document did not, however, offer any procedure for challenging the Bureau's findings.

Rebirth believed that it had not committed any of the violations identified by the Bureau and thus did not submit any documentation showing that it had cured the violations alleged in the Plan of Improvement. Shortly after the deadline for submitting the documentation had passed, Melanie

Brizzi, the head of the Bureau, sent Rebirth a letter notifying the organization that the Bureau would terminate Rebirth's certificate of registration in two weeks because of Rebirth's failure to provide evidence that it had cured the purported violations. Like the Plan, the notice of termination did not give Rebirth a chance to challenge the Bureau's findings or its decision to terminate Rebirth's registration.

Rebirth nonetheless sent the Bureau a letter requesting an opportunity to appeal administratively the agency's impending termination of the registration. Brizzi responded with a letter of her own, telling Rebirth that "[t]he Indiana General Assembly did not provide for an administrative appeal process for the loss of" a certificate of registration and that therefore the Bureau would not grant "an administrative appeal review process before the Division of Family Resources." The Bureau terminated Rebirth's registration without any hearing, and Rebirth ceased operating the child care ministry.

The following month, Rebirth filed a lawsuit claiming that the Bureau had violated its right to due process under the Fourteenth Amendment by terminating its registration without first providing Rebirth with an opportunity to challenge the termination. In Rebirth's first amended complaint (the complaint relevant to this appeal), it named as defendants Brizzi and Michael Gargano, who was the Secretary of the Indiana Family and Social Services Administration and who oversaw the Bureau when it terminated Rebirth's registration. Rebirth sued the defendants in both their individual and official capacities, seeking damages and injunctive relief.

Early in the litigation, the district judge granted the defendants' motion to dismiss the individual-capacity claims

on the ground of qualified immunity. The judge noted that the procedures of the Family and Social Services Administration do not require an administrative appeals process and reasoned that, in light of this fact, Brizzi and Gargano did not act contrary to clearly established law when they failed to provide Rebirth with an administrative hearing or "to otherwise take unilateral action to change" the agency's procedures.

Rebirth's official-capacity claims went forward. After the parties cross-moved for summary judgment, the district judge entered judgment for Rebirth on the official-capacity claims, reasoning that Rebirth was deprived of a property interest without due process. *See Rebirth Christian Acad. Daycare, Inc. v. Brizzi*, 96 F. Supp. 3d 835 (S.D. Ind. 2015). The judge explained that when "state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right." *Id.* at 845 (quoting *Cornelius v. LaCroix*, 838 F.2d 207, 210 (7th Cir. 1988)). And, the judge continued, because "Indiana law provides that child care ministries are entitled" to a certificate of registration "as long as they are in compliance with" the relevant statutes and regulations, Rebirth "has a property interest in its certificate of registration as an unlicensed child care ministry to which due process protections apply." *Id.* The district judge concluded that the process provided by the agency—notice provided by the Plan of Improvement and only post-deprivation judicial remedies proposed by the defendants—"do not provide a level of process that comports with the due process requirements." *Id.* at 849. The judge explained that the Plan of Improvement did not provide adequate process because it afforded Rebirth an opportunity

"only to *correct* alleged violations, but not *challenge* them." *Id.* at 850. Although an informal challenge by Rebirth to the findings in the Plan might be resolved by the individual inspector, "[s]uch an ad hoc and unpredictable process can hardly be considered to comport with procedural due process standards." *Id.* The district judge also determined that the post-deprivation judicial remedy identified by the defendants (an action in tort) did not provide due process because no tort claim exists under Indiana law that would provide relief to Rebirth. *Id.* at 851–52.

In the order granting Rebirth's motion for summary judgment, the district judge directed the parties to confer and "reach an agreement regarding administrative procedures that meet the requirements" of due process. *Rebirth*, 96 F. Supp. 3d at 852. After discussions, the parties proposed that the district judge enter a permanent injunction ordering the Family and Social Services Administration to provide registered child care ministries with "the same administrative appeal process as provided to licensed child care centers for enforcement actions." The district judge entered the permanent injunction proposed by the parties.

## II.

On appeal, Rebirth challenges the district court's dismissal of the individual-capacity claims against Brizzi and Gargano. Rebirth maintains that the defendants are not entitled to qualified immunity because, at the time its registration was terminated, the law clearly established that Rebirth had a property interest in its registration as a child care ministry and that the defendants could not deprive Rebirth of this property interest without first allowing it an opportunity to be heard.

Rebirth can overcome the qualified-immunity defense (which protects government officials from liability from civil damages) only if we conclude (1) that the defendants violated a constitutional right and (2) that the constitutional right was clearly established at the time of the violation. *See Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016). The appellees (Brizzi and Gargano) accept the district court's ruling that they violated Rebirth's constitutional right. Thus, we address only the question whether the constitutional right at issue was clearly established at the time of the violation.

Rebirth's due-process claim requires a two-step analysis: "The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Forbes v. Trigg,* 976 F.2d 308, 315 (7th Cir. 1992)); *see Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). We therefore begin with the question whether the law clearly established that Rebirth had a property interest in its registration as a child care ministry. We conclude that the answer is yes.

This question is not a close one, as the law on this issue has been clearly established for decades. As we said almost thirty years ago (and have since repeated), "[w]here state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement." *Cornelius v. LaCroix*,

838 F.2d 207, 210 (7th Cir. 1988); *see Kvapil v. Chippewa Cty., Wis.*, 752 F.3d 708, 713 (7th Cir. 2014); *Barrows*, 478 F.3d at 780; *Talley v. Lane*, 13 F.3d 1031, 1035 (7th Cir. 1994); *Cont'l Training Servs., Inc. v. Cavazos*, 893 F.2d 877, 893 (7th Cir. 1990). Here, the state did exactly that: it gave Rebirth a benefit—a certificate of registration entitling it to operate a child care ministry—and created a system of rules defining when the state could revoke that entitlement. *See* IND. CODE § 12-17.2-6-9 (providing that child care ministry's certificate of registration may be revoked only "if the operator or an employee of the child care ministry violates" the statutes or regulations governing registered ministries). Thus, any reasonable government official would have understood that Rebirth had a property interest in its registration as a child care ministry. *See Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) ("To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

Numerous Supreme Court decisions reinforce our conclusion that, because Rebirth was entitled to retain its registration unless it violated state law, Rebirth's ability to operate a registered child care ministry was a clearly protected property right at the time that the defendants revoked its registration. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985) (holding that classified civil service employees had property rights in continued employment where state statute provided that such employees could be dismissed only for cause); *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (holding that trainer had property interest in horse-training license where state law provided that license could be suspended "only upon a satisfactory showing

that his horse had been drugged and that he was at least negligent in failing to prevent the drugging"); *Mackey v. Montrym*, 443 U.S. 1, 10 (1979) ("[S]uspension of a driver's license for statutorily defined cause implicates a protectible property interest … ."); *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (recognizing property interest in welfare benefits because "[s]uch benefits are a matter of statutory entitlement for persons qualified to receive them").

These decisions thus demonstrate that the question whether Rebirth had a protected property interest in its registration was beyond debate. *See al-Kidd*, 563 U.S. at 741 (explaining that case directly on point is not required for constitutional right to be clearly established; rather, "existing precedent must have placed the statutory or constitutional question beyond debate"); *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010) ("[E]ven where there are notable factual distinctions between the precedents relied on and the case before the Court, if the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights they can demonstrate clearly established law."); *McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir. 2004) ("The salient question is not whether there is a prior case on all fours with the current claim but whether the state of the law at the relevant time gave the defendants fair warning that their treatment of the plaintiff was unconstitutional.").

The appellees respond that Rebirth's property interest was not clearly established because the registration is "not a license but [is] an exemption from licensure." But an argument over semantics does not get the appellees anywhere because, when determining the existence of a property interest, "we must look behind labels." *Reed v. Vill. of Shorewood*,

704 F.2d 943, 948 (7th Cir. 1983). "A license is nothing but a promise by the issuing body not to interfere in business conducted according to its terms." *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir. 1995) (citing *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994); *Toulabi v. United States*, 875 F.2d 122 (7th Cir. 1989)). Thus, the certificate of registration that Rebirth obtained was a de facto license; the appellees' referring to it as an "exemption" does not persuade us to treat it otherwise.

The appellees also maintain that "[t]he fact that a reasonable official would know that a license to operate is a property interest does not mean that the official would know that an exemption from the licensure requirement is also a property interest." They contend that "[i]t is not unreasonable for a public official to believe that an exemption from licensure differs from a license, because even if the exemption is lost the entity can continue to operate if it obtains a license." This argument misses the point. Even if Rebirth could have requested a license after the defendants had revoked its registration, a reasonable official would nonetheless have understood that Rebirth had a property interest in the uninterrupted registration of its child care ministry. If anything, the purported distinction between a license and registration goes only to the value of a registration, not its status as a property interest; as the appellees point out in their brief, "[t]he requirements for registering and operating an unlicensed child care ministry are less extensive than the requirements for operating a licensed child care center or home."

The only question that remains is whether the *manner* in which the appellees deprived Rebirth of its property interest

violated clearly established law. Here, too, we conclude that the answer is yes. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). It has long been clearly established that the "root requirement" of due process is that a person "be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *see Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (explaining that the Constitution usually "requires some kind of a hearing *before* the State deprives a person of liberty or property"); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7 (1972) (stating that "deprivation of a protected interest need not be preceded by opportunity for some kind of hearing" only in "rare and extraordinary situations"); *Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013) ("The due process clause of the fourteenth amendment does require a state to afford an opportunity for a hearing before depriving someone of a property right created by state law."); *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1015 (7th Cir. 1990) ("Generally, a pre-deprivation hearing is required, but the formality and procedural requisites for a hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings.").

Rebirth was clearly entitled to a pre-deprivation opportunity to challenge the proposed loss of its registration. We agree with the district judge's assessment—unchallenged by

the appellees—"that the interest at stake here, to wit, [Rebirth's] interest in the continued operation of its child care business, is an important one." *Rebirth*, 96 F. Supp. 3d at 847. Moreover, the appellees have not identified any governmental interest that might have arguably justified their failure to provide Rebirth with an opportunity to be heard *before* depriving it of this significant property interest. The fact that the Bureau did not revoke the registration until two weeks after it gave Rebirth notice of the revocation further undermines any potential argument that the Bureau was responding to some perceived emergency necessitating that it quickly rescind Rebirth's registration without first giving it a chance to challenge the Bureau's allegations. We therefore conclude that, by revoking Rebirth's registration without first providing the organization with an opportunity to be heard, the appellees violated clearly established law and are not entitled to qualified immunity.

The appellees argue that the proper inquiry is not whether Rebirth had a clearly established right to be heard before its registration was revoked but whether it had a clearly established right to an administrative appeal of the type available to license holders. We reject this argument. Contrary to the appellees' assertions, this is not a case about "what amount of process is due." Rather, this is a case in which due process clearly required *some* pre-deprivation opportunity to be heard and the appellees provided *no* opportunity for a hearing, though nothing prevented them from doing so.

The appellees offer several further arguments, but none is persuasive. First, they argue that they gave Rebirth "some form of process"—namely, notice of the termination. But notice is just one component of due process; it is not a substi-

tute for an opportunity to be heard. Second, the appellees contend, as they did in the district court, that Rebirth "had an opportunity to correct the deficiencies by submitting its plan of improvement." As the district judge explained, however, the Plan of Improvement gave Rebirth an opportunity only to correct alleged violations, not to challenge them at a hearing. Third, the appellees continue to insist that Rebirth "had an opportunity for judicial review." But even assuming this to be the case, post-deprivation judicial review is not equivalent to a pre-deprivation hearing, and the allegations in the complaint identify no possible justification for the appellees' postponing Rebirth's hearing until after it lost its ability to operate.

Finally, the appellees offer a fallback position. They argue that we can affirm the district court's dismissal of the individual-capacity claims on the alternative ground that Rebirth's complaint contains no plausible allegations that Brizzi and Gargano are "personally responsible for the due process violation." (Recall that the district judge dismissed the individual-capacity claims on the pleadings.) Specifically, they contend that Rebirth advances only "an incorrect legal conclusion"—not a factual allegation—when it states in its complaint that Brizzi and Gargano are personally responsible for the due-process violation because they had the "authority to create an administrative appeal process." The appellees note that the Indiana statute does not provide for an administrative appeal and thus, they maintain, "[r]esponsibility for not giving Rebirth an administrative appeal … lays with the Indiana General Assembly," which is immune from suit.

Like the appellees' other arguments, this one lacks merit. As an initial matter, although the appellees are correct that no statutory provision requires an administrative appeal before the revocation of a registration, this does not mean that Brizzi and Gargano are excused from providing Rebirth with due process. True, the statutory scheme did not require that registered child care ministries receive an administrative appeal of the type afforded to license-holders, but neither did it prohibit the appellees from providing registered child care ministries with *some* type of pre-deprivation hearing. The issue then is whether Rebirth adequately alleged that the appellees personally decided to withhold from Rebirth the pre-deprivation hearing that they could have provided.

We conclude that Rebirth's complaint plausibly alleges that Brizzi and Gargano were personally involved in depriving Rebirth of an opportunity for a pre-deprivation hearing, and thus the complaint satisfies the requirements of notice pleading. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (explaining that [t]he Rules of Civil Procedure set up a system of notice pleading," under which a "defendant is entitled to know what he or she did that is asserted to be wrongful"); *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) ("[A] complaint must contain facts that are sufficient, when accepted as true, to 'state a claim to relief that is plausible on its face.' … "[T]he plausibility requirement demands only that a plaintiff provide sufficient detail 'to present a story that holds together.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). The letters that the Bureau sent to Rebirth are attached to the complaint and demonstrate that, as the head of the Bureau of Child Care, Brizzi personally notified Rebirth that the Bureau would

terminate its registration and, when Rebirth requested a hearing, told the organization that her Bureau would provide none. These letters, coupled with the allegations in the complaint, plausibly allege that Brizzi was personally involved in the constitutional violation. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]hen a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint.").

Although the allegations against Gargano are less specific, the complaint permits an inference that he was also personally responsible for the denial of due process. As Secretary of the Family and Social Services Administration, Gargano was empowered to "[e]stablish and implement the policies and procedures necessary to implement" the statutes governing child care ministries. IND. CODE § 12-8-1.5-7. He had the statutory authority to perform any functions permitted by the human-services provisions of the Indiana statutes, *see id.* § 12-8-1.5-7(9), (10), and the appellees have identified no law prohibiting him from providing registered child care ministries the opportunity—however informal—for a pre-deprivation hearing. The complaint permits the plausible inference that Gargano knew that registered organizations like Rebirth lacked pre-deprivation hearings, yet he did nothing within his power to provide such organizations with an opportunity to be heard. These allegations are thus sufficient to permit fact development on the individual-capacity claims.

**III.**

In sum, we do not decide the type of pre-deprivation hearing that Rebirth was entitled to or that Rebirth shall now recover damages. We conclude only that Rebirth's complaint alleges that the appellees personally violated clearly established law by depriving Rebirth of a property interest (its registration) without first providing Rebirth with *any* opportunity to be heard. Rebirth will, of course, need more than allegations to prevail on these claims; it will need evidence proving that these defendants were personally involved in the constitutional violation. Given the procedural posture of this case, the district court should, if necessary, provide Rebirth with an opportunity for additional discovery so that it may obtain such evidence.

Accordingly, the judgment of the district court is VACATED only to the extent that it dismisses Rebirth's individual-capacity claims against Brizzi and Gargano, and the case is REMANDED to the district court for further proceedings consistent with this opinion.